**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-107 (1) |
| | § | |
| ANGEL LABRA | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Angel Labra's ("Labra") *pro se* Motion for Compassionate Release (#114), wherein he requests compassionate release based on his medical condition and his purported need to care for his elderly mother.  The Government filed a response in opposition (#119).  United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Labra's motion for compassionate release. Having considered the pending motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On June 11, 2015, a grand jury in the Eastern District of Texas returned a single-count Indictment charging Labra and a codefendant with Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846.  On June 15, 2016, Labra pleaded guilty to the charged offense pursuant to a non-binding plea agreement.  On November 3, 2016, the court sentenced Labra to 135 months' imprisonment, followed by a 5-year term of supervised release. Labra is currently housed at Federal Correctional Institution Bastrop ("FCI Bastrop"), located in Bastrop, Texas.  His projected release date is December 3, 2024.

II.     Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into

law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part,

amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to

reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.      Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking

compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior

to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for

compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897,

2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release

motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Labra is foreclosed from obtaining relief because he has not submitted a request for compassionate release to the warden of the facility where he is housed.  Labra asserts that on June 9, 2020, he made a request for home confinement, which he states was denied by the warden of FCI Bastrop on June 19, 2020.  Although he claims that he attached the request and denial to his motion, he failed to do so and, thus, provided no evidence that he exhausted his administrative remedies.  Indeed, in an affidavit submitted by the Government, James D. Crook ("Crook"), a supervisory attorney for the BOP, declares that he "requested a search of all available databases, files, emails, and information to obtain any and all BOP documents regarding Compassionate Release or Reduction in Sentence requests by inmate Angel Labra."  Crook further states, "BOP staff conducted a search of all relevant files for Compassionate Release or Reduction in Sentence requests by Labra to his Warden at FCI Bastrop[;] however[,] BOP staff did not find any such documents."  Thus, according to the BOP, there is no evidence that Labra submitted a request for compassionate release to the warden at FCI Bastrop.  *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *see Franco*, 973 F.3d at 468

4

("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, 578 U.S. 1174, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Labra requests. Moreover, even if Labra had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.     Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993

F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.   Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics;  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

extraordinary and compelling.[2]   However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.   Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

1.    <u>Medical Condition</u>

In the instant motion, Labra, age 51, contends that he is eligible for compassionate release due to his medical condition. Specifically, Labra claims that extraordinary and compelling reasons exist because he has diabetes, high blood pressure (hypertension), and high cholesterol (hyperlipidemia). Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, when interviewed by Probation in connection with his Presentence Investigation Report ("PSR"), prepared on August 12, 2016, Labra reported that he had diabetes, hypertension, tuberculosis, and an unidentified heart condition. At that time, Labra denied having a primary care physician but reported taking unknown medications. The PSR also reveals that in 2016, he was 5 feet, 2 inches tall and weighed 160 pounds, giving him a body mass index ("BMI") of 29.3 and rendering him overweight.[4] On July 11, 2019, R. Gupta, M.D., C.D. ("Dr. Gupta"), determined that Labra had a BMI between 30.0 and 30.9, making him obese. According to

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), an adult with a BMI between 18.5 and 24.9 is considered normal; an adult with a BMI between 25 and 29.9 is considered overweight; and an adult with a BMI above 30 is considered obese.

Labra's most recent BOP medical records, Dr. Gupta's diagnosis of Labra's obesity remains current.

Labra's medical records confirm that he has Type 2 diabetes.  Labra's most recent A1c readings were 8.5% on October 19, 2020, 8.0% on April 24, 2020, and 8.6% on January 7, 2020.[5]  He is prescribed glipizide to control his diabetes.  Labra is not insulin-dependent, as noted in a medical record dated March 11, 2021.  Labra also has a history of essential hypertension.  According to a BOP medical record generated on July 26, 2021, Labra's hypertension is now in remission and has been since January 3, 2019.  His most recent blood pressure readings were 130/78 and 139/85 on May 7, 2021, 143/73 on March 11, 2021, and 125/78 on May 11, 2020.[6]  Hence, Labra appears to be "at risk" for high blood pressure but does not currently have the condition.  Furthermore, Labra has been diagnosed with hyperlipidemia (high cholesterol).  He is prescribed atorvastatin to manage it.  He is also prescribed aspirin on a daily basis.

In addition, Labra's medical records indicate that he suffers from an unspecified metabolic disorder and an unspecified prostate disorder.  Probation further notes that he previously experienced work-related injuries to his arm and shoulder while incarcerated.  There is no indication in Labra's medical records that he is receiving treatment for these maladies.  Labra is currently classified as a BOP medical Care Level 2 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require

---

[5] A hemoglobin A1c test is a method for measuring blood sugar.  According to the CDC, a normal A1c level is below 5.7%, a level of 5.7% to 6.4% indicates prediabetes, and a level of 6.5% or more denotes diabetes.

[6] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

clinician evaluations monthly to every 6 months.  Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

Thus, none of Labra's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Labra's conditions are all being monitored and are managed with medication, as needed.  *See id*.  The court acknowledges that some of Labra's underlying medical conditions—namely, diabetes, hypertension, and obesity, according to the CDC website, can make him more likely to become severely ill should he contract COVID-19[7]; nonetheless, such commonplace afflictions as diabetes, hypertension, and obesity do not make Labra's case "extraordinary."  *See id*. at 434.

According to the CDC, 34.2 million people in the United States, approximately 10.5% of the population, have diabetes.[6]  Of those, 90 to 95% have Type 2 diabetes.  Due to its prevalence, diabetes cannot be deemed "extraordinary" in order to merit compassionate release.  *See United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from Type 2 diabetes, hypertension, hyperlipidemia, kidney disease, arthritis, and several other medical conditions); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence

---

[7] In relevant part, the CDC states that adults who have diabetes (Type 2) or heart conditions (such as hypertension) or those who are overweight or obese can be more likely to become severely ill from COVID-19.

these conditions had diminished his ability to provide self-care within the facility); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances"); *United States v. Jeffers*, 466 F. Supp. 3d 999, 1007 (N.D. Iowa 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP).

Data from the CDC indicate that 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control.  Additionally, more than 12% of the adult population of the United States (29 million) has high cholesterol. Hence, high blood pressure and high cholesterol also cannot be considered "extraordinary" in order to warrant compassionate release.  *See Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has

hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

Moreover, the CDC states that 42.5% of the adult population in the United States is obese and 73.6% is overweight. Thus, because obesity is pervasive in this country, it does not constitute "extraordinary" circumstances that would justify compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

In this instance, Labra's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food

service, and his current work detail is food service.  He is also able to provide self-care in the institutional setting and is not limited in his activities of daily living.  Clearly, his medical afflictions did not hamper or prevent him from committing his offense of conviction or engaging in prior criminal activities.  Thus, Labra has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

2.   Family Circumstances

Labra contends that his family circumstances present extraordinary and compelling reasons that justify compassionate release.  As explained above, although the court is not bound by § 1B1.13 or the commentary thereto, the court views the commentary as informative of its analysis as to what reasons may be sufficiently extraordinary and compelling to merit compassionate release.  *See Shkambi*, 993 F.3d at 392; *see also Thompson*, 984 F.3d at 433.  The U.S.S.G. acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, under the following conditions:  (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii).  While the U.S.S.G. does not provide a definition of "incapacitation," "[f]or guidance [on what constitutes] 'incapacitation,' courts look to the BOP's non-binding Program Statement for processing compassionate release requests."  *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021); *United States v. Bolden*, No. 16-320, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (consulting the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (same);

13

*United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by the BOP, it "provide[s] guidance for courts as well").

Here, Labra asserts that he wishes to be a caregiver for his 92-year-old mother,[8] who lives alone and reportedly suffers from diabetes and asthma.  He does not contend that his mother is incapacitated or that she cannot carry on the activities of daily living.  In this instance, Labra's purported desire to care for his mother does not constitute extraordinary and compelling reasons warranting compassionate release.  *See United States v. Silverlight*, No. 4:12-CR-201-YGR, 2021 WL 1736864, at *3 (N.D. Cal. May 3, 2021) (holding that the defendant's arguments for "release to care for members of her family [including her minor children] do not rise to the level of 'extraordinary and compelling' circumstances warranting reduction of her sentence"); *United States v. Envert Francisco-Ovalle*, No. 18-CR-526-AJN, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family, while . . . admirable, applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release."); *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (noting that a desire to care for one's elderly parents does not constitute an extraordinary and compelling reason because "[m]any, if not all inmates, have aging and sick parents." (quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019))).

---

[8] The court questions the accuracy of Labra's contentions.  According to his PSR, his mother was 69 years old in 2016, making her only 74 years old at this time.  His father had already passed, and his mother was living in Ixmiquilpan, Hidalgo, Mexico.  Labra further stated that he planned to return to the Brownsville, Texas, area upon release from prison, not to Ixmiquilpan—almost 1,000 miles away.

Moreover, Labra has not shown that he is the only available cargiver for his mother. According to his PSR, Labra has nine adult siblings, all of whom reside in Ixmiquilpan, where his mother lives, who could assist in her care.   Additionally, Labra has fourteen children. According to his PSR, Labra "does not provide support or communicate with any of his children." Nevertheless, half of his children are now adults, ranging in age from 18 to 26.  Four of his adult children—Blanca-Jacqueline (18), Leslie-Naomi (19), Carlos-Osiel (20), and Jose-Angel (26)—also live in Mexico. *See United States v. Blevins*, No. 5:09-CR-15-DCB-JCS, 2020 WL 3260098, at *5 (S.D. Miss. June 16, 2020) (denying compassionate release because Defendant was not "the only available caregiver for the spouse or registered partner"); *United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (denying request for relief and noting that "the court has before it no information as to why other relatives cannot care for [the defendant's] parents").  Moreover, Labra furnishes no documentation verifying his mother's age or illness or the extent, if any, of her disability.  Hence, Labra's family circumstances do not establish that he is entitled to early release from prison.

       3.    <u>Other Reasons</u>

Labra also seeks compassionate release due to his post-sentence rehabilitation and the presence of COVID-19 in prison.

       a.    <u>Rehabilitation</u>

Labra maintains that his post-sentence rehabilitation, evidenced by the courses and programs he has completed, establishes extraordinary and compelling reasons for compassionate release.  Although Labra provides the court with a list of commendable achievements and goals, he has not presented sufficient grounds for compassionate release.  While the court may consider

rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

>    b.    COVID-19

Labra also maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Nevertheless, as of August 2, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 980) and 0 staff members at FCI Bastrop as having confirmed positive cases of COVID-19, 369 inmates and 43 staff members who have recovered, and 1 inmate who succumbed to the disease. Thus, it appears that the facility where Labra is housed is handling the outbreak appropriately and providing adequate medical care.

Although Labra expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Labra, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No.

17

3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 205,728 doses of the vaccine. According to www.bop.gov, FCI Bastrop, where Labra is housed, has fully inoculated 1,053 inmates and 144 staff members. Indeed, according to Labra's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on March 30, 2021, and the second dose on April 20, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection."); 

18

*accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss,* 948 F.3d 691, 693 (5th Cir. 2020).   In exercising its discretion, the court finds that Labra has failed to establish that his medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence and release him from confinement.

C.     Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).   *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.   Labra's offense of conviction stems from his participation in a drug-trafficking conspiracy involving the distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or 50 grams or more of methamphetamine (actual).

On April 20, 2015, Labra and codefendant Brenda Gonzalez ("Gonzalez") were on a Greyhound bus in Denton, Texas.   Agents from the Drug Enforcement Administration boarded the bus and made contact with several bus passengers, including Labra and Gonzalez.   Law enforcement conducted a consensual search of Gonzalez's bag and located a package wrapped in aluminum foil at the bottom.   Gonzalez told officers that the package belonged to Labra and claimed that she was unaware of its contents.   The package was seized, and the contents were

19

subsequently tested.   Laboratory reports indicated that the package contained 980 grams of methamphetamine (actual).

Labra's criminal history begins at age 19 and includes prior convictions for aiding and abetting and alien smuggling.  He was also arrested five times from 2006 to 2015, for offenses ranging from theft, bringing in, transporting, and harboring aliens, aiding and abetting, and manufacturing and delivery of a controlled substance.  While incarcerated, Labra has been found guilty of several disciplinary violations, which include possessing a non-hazardous tool, possessing an unauthorized item (2), being unsanitary or untidy, and lying or falsifying a statement.  In view of the nature and circumstances of his offense of conviction, his criminal history, and his prison disciplinary record, the court cannot conclude that Labra's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

Furthermore, granting Labra compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal

20

conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Labra after he has served only 75 months (or approximately 62%) of his 135-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Labra's track record is similarly a poor one. In this instance, there is no reason to believe that Labra would not revert to engaging in criminal activities and dealing drugs if released from prison at this time.

III.   Conclusion

In sum, Labra has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every

prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

      Consistent with the foregoing analysis, Labra's *pro se* Motion for Compassionate Release (#114) is DENIED.

      SIGNED at Beaumont, Texas, this 2nd day of August, 2021.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE