**UNITED STATES DISTRICT COURT**       **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-107 (1) |
| | § | |
| ANGEL LABRA | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Angel Labra's ("Labra") *pro se* Motion for Compassionate Release (#125), wherein he requests—for the second time—that the court grant him compassionate release due to his health condition and the threat of COVID-19 in prison.[1]  The Government filed a response in opposition (#126).  United States Probation and Pretrial Services ("Probation") submitted an updated report, which recommends that the court deny Labra's motion. Having considered the pending motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On June 11, 2015, a grand jury in the Eastern District of Texas returned a single-count Indictment charging Labra and a codefendant with Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846.  On June 15, 2016, Labra pleaded guilty to the charged offense pursuant to a non-binding plea agreement.  On November 3, 2016, the court sentenced Labra to 135 months' imprisonment, followed by a 5-year term of supervised release. Labra is currently housed at Federal Correctional Institution Bastrop ("FCI Bastrop"), located in Bastrop, Texas.  His projected release date is December 3, 2024.

---

[1] Labra's first motion for compassionate release (#114) was denied by the court on August 2, 2021 (#124).  Accordingly, the court construes Labra's present motion as a motion for reconsideration of the court's August 2, 2021, Memorandum and Order.

II.     Reconsideration of Compassionate Release

The court denied his initial motion for compassionate release, in part, because Labra failed to exhaust his administrative remedies.  In the instant motion, Labra asserts that he has since exhausted his administrative remedies because he made a formal request to Warden G. Rosalez ("Warden Rosalez"), the warden of the facility where he is housed, on August 8, 2021.  Probation reports that on September 9, 2021, Warden Rosalez denied Labra's request for compassionate release.  Warden Rosalez acknowledged Labra's diagnoses of Type 2 Diabetes Mellitus and Hyperlipidemia but determined that Labra was able to perform the instrumental activities of daily living, his prognosis was good, he was only 51 years old, and he was under an active warrant.[2] Labra's medical afflictions and treatments were discussed in depth in the court's prior Memorandum and Order and were found not to present extraordinary and compelling reasons for compassionate release.

In his most recent motion, Labra does not assert any new substantive arguments, raise any additional medical disorders, show that he would not pose a risk to society if released, or otherwise demonstrate that compassionate release is warranted.  Labra merely renews his argument that extraordinary and compelling circumstances exist due to his medical condition and the presence of COVID-19 in prison, which the court previously analyzed and rejected.  In

---

[2] Probation reports that Labra has unspecified disorder of the prostate, Type 2 diabetes, cataracts, hypertension, hyperlipidemia, unspecified metabolic disorder, necrosis of pulp, and constipation. Probation further notes that he previously experienced work-related injuries to his arm and shoulder while incarcerated.  At the time of his initial motion for compassionate release, Labra was classified as a Care Level 2 inmate, and he remains classified as such today.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months.  Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring.  Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

addition, he briefly argues that his ethnicity places him at a high risk of developing serious illness due to COVID-19.  Labra also contends that compassionate release is warranted due to the Bureau of Prison's ("BOP") modified operations in light of the COVID-19 pandemic.  For the following reasons, the court is not persuaded by Labra's contentions.

A.    Ethnicity

Labra asserts that he is part of a racial or ethnic minority group that puts him at a higher risk of serious illness should he contract COVID-19.[3]   In considering Labra's request for compassionate release, however, the court must take an "individualized and particularized review" of Labra's characteristics.  *United States v. Ashley*, No. CR 17-00282-KD-B-1, 2020 WL 7771215, at *4 (S.D. Ala. Dec. 30, 2020) (citing *United States v. Tobias*, No. CR 19-143 (BAH), 2020 WL 4673414, at *5 (D.D.C. Aug. 12, 2020); *United States v. Brown*, No. 13-CR-00030 (ESH), 2020 WL 4346911, at *3 (D.D.C. July 29, 2020); *United States v. Joaseus*, No. 9:16-CR-80011-ROSENBERG, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020)); *see United States v. Chavez*, No. 3:18-CR-0426-B-11, 2020 WL 4500633, at *3 (N.D. Tex. Aug. 5, 2020) ("[T]he Court must consider every prisoner individually and should be cautious about making blanket pronouncements." (quoting *United States v. Delgado*, No. 3:17-CR-242-B (01), 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020))).

In doing so, the court finds that Labra has not shown that his ethnicity elevates his risk of becoming seriously ill from COVID-19 so as to satisfy the "extraordinary and compelling" standard necessary for compassionate release.  *See Ashley*, 2020 WL 7771215, at *4 (denying

---

[3] Labra does not specify the racial or ethnic group to which he belongs in his motion.  After reviewing his Presentence Investigation Report, dated August 12, 2016, however, the court assumes that he is referring to his Hispanic heritage.

compassionate release where the defendant failed to show that his race elevates his risk of serious illness if he were to contract COVID-19); *see also United States v. Ruiz*, No. 19-CR-1285-GPC, 2021 WL 1085715, at *6 (S.D. Cal. Mar. 22, 2021) ("Being of Hispanic descent during the COVID-19 pandemic does not constitute an extraordinary and compelling reason justifying [the defendant]'s release."); *United States v. Mendez*, No. 4:98-CR-47, 2021 WL 1061398, at *4 (E.D. Tex. Mar. 18, 2021) (denying compassionate release where the defendant argued that extraordinary and compelling circumstances existed because he suffered from "hypertension, cholesterol, diabetes, psychosis, schizophrenia, and [was] of Hispanic ethnicity, which place[d] him at a greater risk to contract COVID-19"); *United States v. Santos*, No. 2:14-CR-4, 2020 WL 7767621, at *3 (S.D. Ohio Dec. 30, 2020) (holding that the defendant's Hispanic ethnicity did not constitute an extraordinary and compelling circumstance warranting release); *United States v. Manriquez-Alvarado*, No. 18-20045, 2020 WL 6709552, at *4 (C.D. Ill. Nov. 16, 2020) (rejecting the defendant's argument that compassionate release is warranted because he is Hispanic).  As the court explained in *United States v. Santos*:

> While it is true that statistically Hispanic individuals do see higher rates of COVID-19 cases, hospitalizations, and death, ethnicity itself is not an underlying condition but rather a risk marker.  The underlying conditions for which ethnicity often serves as a marker include socioeconomic status, access to health care, and exposure to the virus related to occupation.  The generalized risk posed to all by COVID-19 is not transformed by an inmate's ethnicity alone into a sufficiently particularized risk to constitute an extraordinary and compelling reason for release.

*Id*.  Hence, Labra's ethnicity argument provides no basis for relief.

B.      BOP's Modified Operations

In his motion, Labra raises concerns about the restrictions imposed on all the inmates housed at FCI Bastrop, which, at present, total 1,020 inmates.  Labra does not describe any

conditions or unique vulnerabilities that apply specifically to him.  He, in essence, contends that "relief is warranted simply because [he] is a prisoner at FCI Bastrop." *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021) (holding that conditions affecting all inmates at the defendant's prison, regardless of their health, age, and family circumstances, did "not warrant the extraordinary remedy of compassionate release" for the defendant individually).  Nonetheless, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements." *Chavez,* 2020 WL 4500633, at *3 (quoting *Delgado*, 2020 WL 2542624, at *3); *see Ashley*, 2020 WL 7771215, at *4 (holding that, in considering a motion for compassionate release, the court must take an "individualized and particularized review" of the defendant's characteristics (citing *Tobias*, 2020 WL 4673414, at *5; *Brown*, 2020 WL 4346911, at *3; *Joaseus*, 2020 WL 3895087, at *2).

Labra seemingly fails to recognize that COVID-19 has disrupted everyone's daily routines and limited their opportunities, both inside and outside of prison, and many experience substantial fear and anxiety about the effects of the disease.  According to the BOP's website, the "BOP recognizes the importance for inmates to maintain relationships with friends and family.  During modified operations in response to COVID-19, the BOP suspended social visitation, however, inmates were afforded 500 (vs. 300) telephone minutes per month at no charge to help compensate for the suspension of social visits."  Moreover, the BOP has modified its operations to allow "[i]nstitutions with active COVID-19 cases [to] make exceptions to [] programming requirements for the safety of inmates and staff."  Additionally, under Level 3 Operations, FCI Bastrop's current operational level, "inmates are limited in their movements to prevent congregate gathering and maximize social distancing"; however, "inmate movement in small numbers is authorized for

the following purposes:  commissary, laundry, showers three times each week, and telephone."

*See United States v. Dodge*, No. CR 17-323-01, 2020 WL 3668765, at \*5 (W.D. La. July 6,

2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of

confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and

compelling circumstances.  Rather, those circumstances are applicable to all inmates who are

currently imprisoned and hence are not unique to any one person."); *see also United States v.*

*Wright*, No. 17-CR-0301, 2020 WL 7334412, at \*5 (D. Minn. Dec. 14, 2020) ("It is undisputed

that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks

within its facilities.").

The safety measures that have been implemented benefit Labra, other inmates, and BOP

staff members during the pandemic.  Indeed, as of May 12, 2022, the figures available at

www.bop.gov list 0 inmates (out of a total inmate population of 1,020) and 0 staff members at FCI

Bastrop as having confirmed positive cases of COVID-19, 422 inmates and 91 staff members who

have recovered, and 1 inmate who succumbed from the disease.  Hence, the mitigation efforts

appear to have been successful, and the consequential inconveniences presented by the BOP's

modified operations on Labra's daily activities do not create an extraordinary and compelling

reason to grant his request for compassionate release and free him from confinement.

III.    Conclusion

In sum, Labra has failed to present any new substantive bases for relief, raise any

significant factual or legal issues warranting redress, show that he is receiving inadequate health

care at the federal correctional institution where he is housed, establish that he would not pose a

danger to society if released, or otherwise demonstrate that compassionate release is warranted.

Therefore, Labra's *pro se* Motion for Compassionate Release (#125) is DENIED.

SIGNED at Beaumont, Texas, this 12th day of May, 2022.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE